1   Marc J. Randazza (SBN 269535)
       mjr@randazza.com
2   D. Gill Sperlein (SBN 172887)
       dgs@randazza.com
3   Alex J. Shepard (SBN 295058)
       ajs@randazza.com
4   RANDAZZA LEGAL GROUP, PLLC
    4035 S. El Capitan Way
5   Las Vegas, NV 89147
    Telephone: 702-420-2001
6   Facsimile: 305-437-7662
    ecf@randazza.com

7
    *Attorneys for Plaintiff,*
8   *Niche Marketing, Inc.*

9
                    **IN THE UNITED STATES DISTRICT COURT**
10                    **CENTRAL DISTRICT OF CALIFORNIA**

11  NICHE MARKETING, INC.,                 Case No. _____
    a Canadian corporation,
12
            Plaintiffs,                     **COMPLAINT FOR:**
13
        v.                                  **(1)   False Advertising Under 15
14                                                  U.S.C. § 1125(a)**
    JEFFREY D. LENNEY, an individual;
15  and JLENNEY MARKETING, LLC, a          **DEMAND FOR JURY TRIAL**
    California limited liability company,
16
            Defendants.
17

18

19          Plaintiff Niche Marketing, Inc. ("Niche" or "Plaintiff") brings this

20  Complaint against Defendants Jeffrey D. Lenney ("Lenney") and

21  JLenney Marketing, LLC ("JLenney Marketing") (collectively,

22  "Defendants") for false advertising under 15 U.S.C. § 1125(a).

23

24

RANDAZZA | LEGAL GROUP

## 1.0   INTRODUCTION

1.    This is a suit about a self-styled marketing "expert" spreading false commercial information about the plaintiff as an anti-competitive commercial campaign for his own business interests.

2.    The "expert," Defendant Lenney, and his company JLenney Marketing, lied to the public to divert potential customers from the Plaintiff to other affiliate marketing services, from which Lenney receives affiliate revenue.

3.    There is no ambiguity as to Defendants' purpose in making these statements, as Defendants bragged about their efforts to publicize these statements, and offered to remove these false and misleading statements in exchange for more favorable reviews of affiliate marketing services from which Lenney receives affiliate revenue.  The extortionate nature of Defendants' actions for commercial purposes is a violation of the Lanham Act.

## 2.0   THE PARTIES

4.    Plaintiff Niche Marketing, Inc. is a Canadian corporation.

5.    Defendant Jeffrey D. Lenney is an individual residing in Anaheim, California.

6.    Defendant JLenney Marketing, LLC is a California limited liability company located in Anaheim, California.

## 3.0   JURISDICTION AND VENUE

7.    This case arises under 15 U.S.C. § 1125 of the Lanham Act. This Court thus has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.    Personal jurisdiction is proper over Defendants because all Defendants are located in California and the wrongful activity at issue took place in California.

9.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1)-(2) and 1391(c)(1)-(2).

## 4.0   FACTS COMMON TO ALL CLAIMS

### 4.1.   Wealthy Affiliate and Affiliate Marketing

10.    Affiliate marketing is a system by which a company (the "Merchant") wants to attract buyers for its products.  Therefore, it pays a freelance marketer (the "Affiliate") a commission on products sold to consumers brought to the Merchant by the Affiliate.

11.    For example, the Affiliate might create a web site that contains a link to the Merchant's web site, and if a visitor to that site follows the link to the Merchant's web site and buys a product on that site, the Affiliate receives a portion of the revenue from that sale.

12.   Several companies own and operate web sites that provide the public with information about how they can become effective affiliate marketers, and provide these services for a fee.

13.   Plaintiff operates the affiliate marketing network Wealthy Affiliate ("W.A.") and the web site <wealthyaffiliate.com> (the "W.A. Site").

14.   Through W.A., Plaintiff provides an informational and educational community for affiliate marketers.  Among other things, Plaintiff provides web sites, web hosting, domain registration services, research tools, and educational services to affiliate marketers.  Many clients build web sites for affiliate marketing purposes, while others build web sites for personal or offline local businesses.

15.   Some clients of W.A., such as bloggers and publishers of online content, at times promote W.A.  W.A. does not have any right to control the actions of any given Affiliate; they are free to promote any company or Merchant they choose.

16.   These bloggers and publishers are free to publish any content they wish.

17.   W.A.'s affiliate training does not teach posting false information, fake reviews, or anything other than truthful and thorough content for the affiliate's online audience.

18.   W.A. encourages affiliates to choose their own niche, their own hobby, or their own passion in choosing entities for which to be an Affiliate.  The focus of W.A.'s affiliate certification training is for affiliates to promote products other than W.A. itself.

19.   Some of the people who promote W.A. author and publish reviews about the quality of W.A.'s education services.

20.   Some of these reviews are comparative in nature, with the reviewer comparing W.A.'s services to those of W.A.'s competitors.

21.   W.A. does not necessarily know about the details of such reviews, nor does it control that content.  W.A. does not have any procedures requiring factual review or verification before any affiliate publishes such a review.

22.   According to Defendants, three of the competitors evaluated in these reviews are Inbox Blueprint, Profit Academy, and 100k Factory.

23.   According to Defendants, each of these competitors were given a negative evaluation compared to W.A. in these reviews (the "Competitor Reviews").

**4.2.     Jeff Lenney and JLenney Marketing**

24.   Defendant Lenney is an affiliate marketer and a self-proclaimed "affiliate expert" who frequently brags about his claimed financial success as an affiliate marketer.

25.     Lenney is the owner of Defendant JLenney Marketing. On information and belief, Lenney and/or JLenney Marketing own and operate the web site <jefflenney.com> (the "Lenney Site").

26.     On the Lenney Site, Lenny authors and publishes reviews of affiliate marketing resources and provides links to these resources.

27.     On information and belief, Lenney receives income from some of the resources to which these links direct consumers.

28.     Defendants receive affiliate income from the affiliate marketing programs Inbox Blueprint, Profit Academy, and 100k Factory.

### 4.3.     The W.A. Article

29.     On November 1, 2016, Defendants published a "review" on the Lenney Site titled "Wealthy Affiliate Review: SCAM ALERT!" (the "W.A. Review") (updated February 1, 2017).

30.     The central claim of the W.A. Review is that Plaintiff's W.A. program is a "scam."   The review contains three allegations to support this claim:

    a. W.A.'s affiliates lie in their comparative reviews by making false claims as to the qualities of competing services;

    b. Plaintiff encourages Affiliates to promote W.A. itself rather than other Merchants from which the Affiliates could receive affiliate revenue, meaning "W.A.'s

Product Has Become all about promoting the product"; and,

c. Plaintiff does not adequately disclose to potential consumers the actual cost of its educational affiliate program.

31.   These assertions are false.  W.A.'s affiliate training does not encourage affiliates to provide false information in content they publish.  W.A.'s product is not all about promoting their product. W.A. does not in any way obscure the cost of its program.

32.   Read in context, these statements communicate the false and misleading message that W.A. is not a trustworthy affiliate program because it encourages third parties to publish false comparative reviews in order to make W.A. appear more attractive to potential consumers.

33.   There is no truth to this message.  Even if some of these reviews contain false information, W.A. does not exercise any control over content that third parties create regarding W.A.

34.   Defendants conclude the W.A. Review by discouraging readers from using W.A. and encouraging readers to use the services of the reviewed companies from which Defendants receive affiliate income.

35.   The W.A. Review has received dozens of comments.

36.   The likely effect of the W.A. Review is to damage the reputation and goodwill of Plaintiff and W.A., and to cause loss of income to Plaintiff as a result of fewer sales of the W.A. program.

37.   Another effect is to drive direct income to Defendants.

38.   There are at least six ways in which Defendants receive income from the W.A. Review:

a. Lenney has posted comments to the W.A. Review encouraging readers to use the reviewed companies and providing direct links to the services of these companies.

b. Within the body of the W.A. Review, Lenney provides direct links to a "various hot niches" page on the Lenney Site.  On this page, Lenney promotes numerous products from which Defendants receive affiliate income.

c. Upon visiting the page where the W.A. Review is located, readers are presented with an "email opt-in" popup that encourages readers to sign up for Defendants' email list.  Defendants use this list to promote various products and services from which they receive affiliate income.

d. As readers scroll down the page of the W.A. Review, they are presented with additional statements

1  encouraging readers to sign up for Defendants'

2  email list.

3      e. In a sidebar on the page of the W.A. Review,

4  Defendants have placed a statement encouraging

5  readers to sign up for Defendants' email list.

6      f. The top of the page of the W.A. Review provides

7  links to pages of the Lenney Site where Defendants

8  encourage users to purchase products and services

9  from which Defendants receive affiliate income.

10      39.   As examples of the allegedly false comparative reviews,

11  the W.A. Review points to the Competitor Reviews.

12      40.   Lenney receives affiliate income from the subjects of the

13  Competitor Reviews, and thus had a financial incentive in publishing

14  the W.A. Review.

## 4.4.   Defendants' Threats

16      41.   On March 24, 2017, Lenney sent an email to Plaintiff

17  directing Plaintiff to the W.A. Review.

18      42.   In this email, Lenney says that has "gotten amazingly

19  good at SEO"[1] and that his W.A. Review has received prominent

20  search engine rankings for the terms "Wealthy Affiliate Review,

21

[1]   This is an acronym for "search engine optimization," a term used
22  to refer to techniques to improve a web site's Internet search
engine rankings, such as populating a web site with specific
23  language or purchasing advertising keywords.

24

Wealthy Affiliate Scam . . . and in and out of page of Google for 'wealthy affiliate' itself . . . and a few more solid guest post links should push me to the top 3 for all phrases, easily."

43.    Lenney states in this email that he would be willing to change his review of W.A. to something more positive if Plaintiff were to change how it instructs Affiliates on writing their reviews.  He concludes with the statement "*I'm in the position to send you quality traffic, or not . . . .*"

44.    On April 2, 2017, Lenney sent another email to Plaintiff bragging about the search engine rankings Lenney had obtained for the W.A. Review and encouraging Plaintiff to allow Lenney to provide an "honest" review of W.A.

45.    Given that W.A. does not instruct or encourage its Affiliates to write false reviews of competitors, Lenney's message in the email is clear: "start giving programs from which Defendants earn income positive reviews, or Defendants will continue to post false information about W.A. and ensure that Internet users see these false statements."

46.    This makes it clear that Defendants' motivation in publishing the W.A. Review was to spread lies about W.A. in order to harm it for the financial benefit of W.A.'s competitors, and thus Defendants' own financial benefit.

## 5.0   CLAIMS FOR RELIEF

### 5.1.   FIRST CLAIM FOR RELIEF

### False Advertising Under 15 U.S.C. § 1125(a)

47.    Plaintiff hereby incorporates all prior allegations of the Complaint as if set forth herein.

48.    Defendants authored and published the W.A. Review.

49.    The W.A. Review constitutes commercial advertising or promotion under the Lanham Act, as it: (1) is in the form of an advertisement that explicitly identifies W.A.'s product and the products of competitors, and was primarily published with a commercial motive; (2) was published by a competitor of W.A.; (3) was published for the purpose of influencing consumers to purchase Defendants' services or those of W.A.'s competitors from which Defendants receive affiliate income; and (5) was broadly disseminated to the relevant purchasing public.

50.    The W.A. Review contains both literally false and misleading statements of fact about the nature, characteristics, or qualities of Plaintiff and W.A.'s services.

51.    The false statements in the W.A. Review are likely to deceive a substantial segment of potential consumers, as they are presented as credible factual assertions by an affiliate marketing "expert," rather than mere statements of opinion or rhetorical hyperbole.

52.     This deception is material, as consumers are less likely to purchase Plaintiff's services if they believe that W.A. encourages its Affiliates to lie and obscures information about its services.

53.     Plaintiff is likely to be injured as a result of the W.A. Review in the form of lost commercial reputation and goodwill, as well as loss of income due to fewer consumers purchasing W.A.'s services.

54.     Under 15 U.S.C. § 1116(a) Plaintiff is entitled to injunctive relief to stop dissemination of Defendants' false and misleading statements, and prevent publication of such statements in the future.

55.     Plaintiff is additionally entitled to injunctive relief requiring Defendants to engage in correcting advertising, explaining to the audience of the W.A. Review that the statements about W.A. in the W.A. Review are false and misleading.

56.     Under 15 U.S.C. §1117(a), Plaintiff is entitled to an award of damages resulting from Defendants' conduct, including Defendants' profits attributable to their false and misleading statements, damages to Plaintiff resulting from these statements, and costs and attorneys' fees incurred in bringing this action.

## 6.0   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully seeks judgment as follows:

A.     An award of damages as a result of Defendants' violation of 15 U.S.C. § 1125(a);

B.     All of Defendants' profits attributable to their violation of 15 U.S.C. § 1125(a);

C.     As this is an "exceptional case," an award of all costs and attorneys' fees incurred in bringing this action as provided for under 15 U.S.C. § 1117(a);

D.     Injunctive relief requiring Defendants to cease all further publication and dissemination of their false and misleading statements, or substantially similar statements, and preventing any future dissemination of such statements;

E.     Injunctive relief requiring Defendants to engage in corrective advertising to remediate the harm caused by their statements, including statements to the audience of the W.A. Review that the statements about W.A. in the W.A. Review are false and misleading; and

F.     All other relief to which Plaintiff may be entitled.

. . .

. . .

. . .

. . .

1

## **DEMAND FOR JURY TRIAL**

2      Pursuant to Rule 38 of the Federal Rules of Civil Procedure,

3  Plaintiff demands a trial by jury on all causes of action.

4

  Dated: April 19, 2017          Respectfully Submitted,

5

6          /s/ Marc J. Randazza
          Marc J. Randazza, SBN 269535
          D. Gill Sperlein, SBN 172887
7          Alex J. Shepard, SBN 295058
          Randazza Legal Group, PLLC
8          4035 S. El Capitan Way
          Las Vegas, NV 89147

9

10          *Attorneys for Plaintiff,*
          *Niche Marketing, Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Complaint